UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| CONNIE PAYNE, | ) | |
|---|---|---|
| Plaintiff, | ) | 4:08-cv-92 |
| v. | ) | Judge Mattice |
| GOODMAN MANUFACTURING COMPANY, L.P., | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

Defendant Goodman Manufacturing Company L.P.'s (hereinafter "Defendant") Motion to Strike Plaintiff's Summary Judgment Evidence (Court Doc. 22, Mot. to Strike) is presently before the Court. Defendant contends two statements made in paragraphs 15 and 26 of Plaintiff Connie Payne's affidavit ("Plaintiff") contradict her deposition testimony. Defendant also contends that the statement in paragraph 37 of Plaintiff's affidavit is inadmissible hearsay and should not be considered for the purposes of ascertaining whether Defendant is entitled to summary judgment.

For the reasons explained below, Defendant's Motion to Strike will be **DENIED.**

**I.  ANALYSIS**

**A.  Defendant's Motion to Strike**

In *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986), the United States Court of Appeals for the Sixth Circuit held that after a motion for summary judgment has been made, a party may not create a genuine issue of material fact by filing an affidavit

that contradicts earlier deposition testimony. In *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899 (6th Cir. 2006), the Sixth Circuit clarified that the court:

> "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard the affidavit unless the court determines that the affidavit "constitutes an attempt to create a sham fact issue."

*Id.* at 908.

Paragraph 15 of Plaintiff's Affidavit states: "Mr. Hunter explained that he originally issued a score of approximately 3.5 out of 4." Pl.'s Aff. ¶ 15. During Plaintiff's deposition, she did testify that this score may have been a tenth of a point higher or lower but could not be completely sure without seeing "exactly what the score was." Pl.'s Dep. at 155.

The Court agrees with Plaintiff that there is no direct contradiction here. Plaintiff's affidavit and deposition testimony both refer to the "approximate" score in her evaluation. During her deposition, Plaintiff maintained that while she could not provide the exact score, she could testify as to the approximate range of her evaluation score. Because the Court finds that Plaintiff affidavit does not directly contradict her earlier deposition testimony, and does not constitute an attempt to create a sham fact issue, paragraph 15 from Plaintiff's affidavit will be considered by the Court in connection with its analysis of Defendant's pending Motion for Summary Judgment (Court Doc. 16.).

Paragraph 26 of Plaintiff's Affidavit states "Hunter responded 'so you are on the fence.' " Pl.'s Aff. ¶ 26. Defendant contends this remark should be stricken because Plaintiff never mentioned this specific statement during her deposition. Plaintiff, however, points out that Defendant never specifically asked whether Hunter made this additional

comment. Plaintiff did testify that Hunter asked whether she would be returning from her maternity leave and that she thought this question was inappropriate. Pl.'s Dep. at 70-72. The relevant exchange between Plaintiff and Defendant's counsel at her deposition is as follows:

> Q. You referenced conversations that you had with Floyd Hunter about you being pregnant in your complaint. Do you --
> A. Yes.
>
> Q. Could you describe for me those conversations as best you remember them.
> A. He called me to his office one day, and he asked -- well, he said that his supervisor asked him to ask me if I was coming back after I had the baby.
>
> Q. Okay. When did this conversation occur?
> A. It was in April of '08.
>
> Q. Okay. Who is Mr. Hunter's supervisor, if you know?
> A. Karen Stubblefield (phonetic).
>
> Q. Okay. Before you had this conversation with Mr. Hunter, had anyone asked you any question like that before while you were at -- at Goodman?
> A. No.
>
> Q. Okay. After that conversation with Mr. Hunter, had anyone including Mr. Hunter asked you that question again?
> A. No.
>
> Q. So it was a one-time occurrence; is that fair to say?
> A. Yes.
>
> Q. And what was your response to Mr. Hunter?
> A. I said yes, as far as I know, I'm coming back.
>
> Q. All right. And did you mean it?
> A. Yes.
>
> Q. Okay. Is there anything wrong in your mind with asking that question in order to, you know -- you would agree with me that there could be several reasons why a company might want to

> know if an employee is coming back, right?
> A. I don't know. I thought it was an odd question.
>
> Q. Right. But you could understand that, you know, any company has to plan in terms of various things throughout the year, and they want to know if people are going to be there, that sort of thing. You could understand -- I understand that you think it was a little odd, but, like, was it -- I mean, as we look back on it, was it, you know -- inappropriate question?
> A. Yes.
>
> Q. Why do you believe it was inappropriate?
> A. I -- I just -- I don't know why they were asking it, why they would ask that.
>
> Q. Right. I -- I understand you don't know why they would ask it and why it's an odd question, but you indicated you thought it was inappropriate. And so I'm just trying to figure out what the basis of that belief is.
> A. I thought it was strange that they asked me that, and then a few weeks later, I was gone.
>
> Q. Okay. Anything else?
> A. (Witness shakes head.).

*See* Court Doc. 22, Def.'s Br. at 4-5 citing Pl.'s Dep. at 70-72.

After reviewing this exchange, the Court observes that this entire line of questioning focused on Plaintiff's opinion that her supervisor's asking whether she was returning to work after maternity leave was inappropriate. The reference to "anything else" above clearly refers to Plaintiff's own subjective impression of this conversation. The Court agrees with Plaintiff that Defendant's counsel never inquired regarding everything that was said during the course of this conversation. In response, Plaintiff included the comment in paragraph 26 of her affidavit.

Such an affidavit fills a gap left open by the moving party and thus provides the district court with more information, rather than less, at the crucial summary judgment

-4-

stage. Because the deponent is under no obligation to volunteer information not fairly sought by the questioner, the Court concludes the statement in Plaintiff's Affidavit will be considered. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006).

### B.     Plaintiff's Motion to Strike Hearsay Statement

Defendant asserts that certain statements by Plaintiff's co-worker Chris Damron are hearsay and cannot be considered by the Court. In paragraph 37 of Plaintiff's Affidavit, Plaintiff states "On May 2, 2008, I spoke with Chris Damron. Mr. Damron informed me that he had heard my position was eliminated and would be outsourced; however, that he would be absorbing some of her [sic] job duties." Pl.'s Aff. ¶ 37. Plaintiff contends that this statement fits squarely in the definition of inadmissible hearsay because it is "a statement, other than one made by the declarant" that is being "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 802. Plaintiff contends that Damron's statement fits within the hearsay exception in Rule 801(d)(2)(D) because this statement was about Damron's current job duties after Plaintiff's termination.

Rule 801(d)(2)(D) carves out from the definition of hearsay party admissions, statements made, adopted, or made by an agent for the party, when those statements are offered against the party. Included in this carve out from the hearsay rule are "statement[s] by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). This exception includes statements made about a matter within the scope of the declarant's employment. Fed. R. Evid. 801(d)(2)(D). The Court agrees with Plaintiff that Damron's statement in paragraph 37 of her affidavit fits within the ambit of the hearsay

exception in Rule 801(d)(2)(D) of the Federal Rules of Evidence. Accordingly, the Court concludes this statement will be considered.

## II. CONCLUSION

For the reasons explained above, Defendant's Motion to Strike (Court Doc. 22) is **DENIED.**

SO ORDERED this 6th day of July, 2010.

          */s/Harry S. Mattice, Jr.*
          HARRY S. MATTICE, JR.
          UNITED STATES DISTRICT JUDGE